141 F.3d 1178
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
REPEAT-O-TYPE STENCIL, MANUFACTURING CORPORATION, a New
Jersey corporation, Plaintiff/Appellant,
v.
HEWLETT-PACKARD COMPANY, a California corporation, Defendant/Appellee.
 No. 96-55205.
D.C. No. CV-95-7284 DT (RMCx).
 United States Court of Appeals, Ninth Circuit.
 Decided March 9, 1998.
Argued and Submitted June 3, 1997 Pasadena, California.
Withdrawn from Submission June 18, 1997 Resubmitted March 5, 1998.
 
 Appeal from United States District Court for the Central District of California Dickran M. Tevrizian, District Judge, Presiding.
 Before BROWNING, FLETCHER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Repeat-O-Type ("ROT") appeals the decision of the district court dismissing for failure to state a claim ROT's claim that Hewlett-Packard ("HP") engaged in sham litigation against ROT. ROT argues that HP's patent claims were objectively baseless.
 
 
 3
 We review de novo dismissal under Federal Rule of Civil Procedure 12(b)(6). See Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995). Under the Noerr-Pennington doctrine, the Supreme Court has held that persons seeking redress through administrative agencies and the courts are immune from antitrust liability for seeking such redress. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Sham litigation is an exception to this grant of immunity. To determine if litigation is a sham, the Supreme Court instructs us to first determine if "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Then, "[o]nly if [the] challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Id. "[T]he court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon." Id. (emphasis in original) (citation and internal quotation marks omitted). In addition to this test, we require that "[w]hen the antitrust plaintiff challenges a single suit rather than a pattern ... a finding of sham requires not only that the suit is baseless, but also that it has other characteristics of grave abuse, such as being coupled with actions or effects external to the suit that are themselves anticompetitive." Boulware v. State of Nevada, Dep't of Human Resources, 960 F.2d 793, 797-98 (9th Cir.1992) (citation and internal quotation marks omitted).
 
 
 4
 As an initial matter, the grant of summary judgment to ROT on the patent claims is no proof that HP's claims were baseless. See Professional Real Estate Investors, 508 U.S. at 65 (concluding that "[e]ven in the absence of supporting authority, [the defendant] would have been entitled to press a novel copyright claim as long as a similarly situated reasonable litigant could have perceived some likelihood of success"); see also Liberty Lake Investments, Inc. v. Magnuson, 12 F.3d 155, 158 (9th Cir.1993) ("[W]hen the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.") (quoting Professional Real Estate Investors, 508 U.S. at 60 n. 5).
 
 
 5
 HP argues that its twelve patent claims were not objectively baseless and that they were based upon a reasonable extension of the theory of impermissible reconstruction, which prohibits the purchasers of a patented product from transforming the product into another product. HP argued in its suit against ROT for trademark and patent infringement that ROT's modification of the Stanley and Kukla cartridges was not permissible repair because the items replaced (ink in the Stanley cartridge and the cap on the Kukla cartridge) were not worn or spent and did not involve any repair necessary to preserve the intended life of the cartridge. Instead, HP argued that ROT's modifications were designed to create a new, refillable, product and therefore constituted a reconstruction of a patented product.
 
 
 6
 ROT argues that HP's patent claims were baseless because: 1) HP did not explain infringement on nine of the twelve patents, but only discussed three patents in its Motion for Partial Summary Judgment; 2) HP did not file a claims chart identifying which patent claims were violated; 3) HP's assertion of infringement of U.S. Patent No. 4,931,811 (the " '8 11" patent) is a per se violation of antitrust law;[1] and 4) HP's assertion of infringement of U.S. Patents No. 4,827,294 (the " '294" patent) and No. 5,108,503 (the " '503" patent) had nothing to do with any of the products involved in this case.
 
 
 7
 We are not persuaded that HP's actions were objectively baseless or that they demonstrated grave abuse. We note that HP discussed its infringement theory with reference to several representative patent claims because the dispositive issue on eleven of them (excluding the ink patent) was the same: "whether ROT's modifications to unused HP ink-jet cartridges constituted an impermissible reconstruction of the cartridges." Nor do we find that a claims chart is a prerequisite for a suit.
 
 
 8
 The '811 patent claim is not like the patent misuse found in Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). HP is not selling patented refillable cartridges, requiring its customers to buy only HP unpatented ink and suing a competitor for its creation of the cartridges; it is asserting that ROT made illegal modifications to HP's patented, non-refillable cartridges.
 
 
 9
 Although ultimately unsuccessful, HP's claims based on the '294 and '811 patents were not objectively baseless. Claim 3 of the '294 Patent describes an inkjet cartridge and its pen body housing with an ink storage compartment therein; ROT's modification of the Kukla cartridge involved breaking the cap off of this housing. HP's theory of infringement was that this action impermissibly modified the patented housing. Similarly, with respect to the '811 patent, HP did perform an infringement analysis of ROT's inks before it added the claim to its complaint on November 30, 1993, and it produced, documents setting forth that analysis on April 15, 1994.
 
 
 10
 Overall, HP's patent claims, while unavailing, are not objectively baseless nor do they demonstrate grave abuse, therefore, the judgment of the district court is affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 ROT argues that it is a violation of the Sherman Act to attempt to use a patent on a container to establish a monopoly on the contents of the container. See Morton Salt Co. v. G.S. Suppiger Co. ., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942)