# CIRCUIT COURT OF FREDERICK COUNTY

Carolinas Cement Co.

v.

Riverton Investment Corp. et al.

Case No. (Law) 99-168

BY JUDGE JOHN E. WETSEL, JR.

April 14, 2000

This case came before the Court on April 13, 2000, on various motions. Thomas M. Lawson and Robert A. Ziogas, Esquires, appeared for Carolinas Cement Company; Warren E. Zirkle, Sean F. Murphy, and J. L. Novak, Esquires, appeared for Riverton Investment Corporation; Clifford A. Athey, Jr., Esquire, appeared for the Weddles.

Thereupon, extensive argument was heard on the Defendants' assertion of the *Noerr-Pennington* doctrine as a privilege to the Plaintiff's proposed discovery. Based on that argument, the Court determines the following is the law.

The *Noerr-Pennington* doctrine is a limited first amendment defense to potential anti-trust liability. "The essence of the [Noerr-Pennington] doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their

petitions are motivated by anticompetitive intent." *Video Intern. Production v. Warner-Amex Cable Com.*, 858 F.2d 1075, 1082 (5th Cir. 1988). *Accord Lockheed Information Mgt. Systems, Inc. v. Maximus, Inc.*, 259 Va. 92 (2000).

While the *Noerr-Pennington* doctrine may be used to refine the issues, which consequently narrows the range of permissible discovery, as was done in this case, the doctrine does not technically give rise to a privilege against discovery. *North Carolina Elec. Membership Corp. v. Carolina Light & Power Co.*, 666 F.2d 50, 52 (4th Cir. 1981).

The *Noerr-Pennington* doctrine is not a defense to a defamation action. Recently the courts have struggled to balance the First Amendment right to freedom of expression with the right of the individual to the protection of his personal good name. *See The Gazette, Inc. v. Harris*, 229 Va. 1, 29, 325 S.E.2d 713 (1985), *cert. denied*, 472 U.S. 1032 (1985). Since *The Gazette* case the law of libel has been further refined by the United States Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990), which is discussed at length later. *See also Chapin v. Greve*, 787 F. Supp. 557, 561-63 (E.D. Va. 1992), aff'd *sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993).

Concerted First Amendment activity which is protected by the *Noerr-Pennington* doctrine cannot be a predicate for tort liability under either a civil conspiracy theory or tortious interference with a contractual relationship or expectancy because the action is protected under the First Amendment. Therefore, the suits for which there was probable cause and to which the *Noerr-Pennington* doctrine applies could not form the factual predicate for the tort of tortious interference or civil conspiracy. The Supreme Court of Virginia has "previously acknowledged that an affirmative defense of justification or privilege applies in a claim for intentional interference in a business contract." *Lockheed Information Mgt. Systems, Inc. v. Maximus, Inc.*, 259 Va. 92, 105 (2000), *citing Maximus v. Lockheed*, 254 Va. 408 at 412-13, 493 S.E.2d at 378 (1997).

There is a divergence in judicial opinion among the federal circuits about whether the *Noerr-Pennington* doctrine protects the solicitation of "straw parties" to prosecute litigation against a business competitor. The Court has deferred deciding that issue pending further proceedings. The Court asked the parties to provide any recent law review articles which they may find on this subject. Historically, champertous actions have been viewed with disfavor in Virginia. *See MNC Credit Corp. v. Sickels*, 255 Va. 314, 318, 497 S.E.2d 331 (1998).

Thereupon, the Court considered the Defendants' motion for partial summary judgment. The Court reviewed the previous litigation between the

parties and their privies which form the basis of the motion for judgment. The presiding judge, who was also the presiding judge in each of the cases in Warren County which were at issue, incorporated the record of those cases by reference, applied the probable cause test pronounced in *Professional Real Estate Investors, Inc. v. Columbia Pictures, Inc.*, 508 U.S. 49, 62, 129 L. Ed. 2d 611 (1993), and found that:

1. There was probable cause to file *Carolinas Cement v. Zoning Appeals Bd.*, Warren County Law No. 99-158, and *Bowden v. Zoning Appeals Bd.*, Warren Law No. 99-168 (by-right use and access roads) therefore, those cases were not shams or unfounded litigation. The Weddles were parties in both of these suits.

2. There was probable cause to file *Riverton v. Economic Devel. Auth.*, Warren County Chancery No. 99-177 (Freedom of Information), and *Riverton v. Economic Devel. Auth.*, Warren County Chancery No. 189 (suit to enforcement settlement of Case No. 99-177); therefore, those cases were not shams or unfounded litigation.

3. *Carolinas Cement v. Zoning Appeals Bd.*, Warren Law No. 99-263 (Carolinas' Appeal of the B.Z.A. decision on the use of the road at the river site and Carolinas' Application for variance), is not part of this lawsuit.

4. *Riverton and Frittses v. Economic Devel. Auth.*, Warren Chancery No. 99-220 is not part of this lawsuit.

Thereupon, the Court considered the Motion for a protective order and Motion to Quash of the Weddles, Bowden, and McCarty. Upon consideration whereof, it is adjudged and ordered that the motion for a protective order and motion to quash is granted in part and denied in part:

1. Carolinas is entitled to depose these persons and require them to produce documents dealing with any discussions with agents of Riverton or anyone else about the nature and extent of the Carolinas Cements' business in general, its proposed facility in Warren County, or about any law violations allegedly committed by Carolinas Cement, any corporation allegedly affiliated with Carolinas, or by any officers or agents of Carolinas and its affiliated corporations.

2. Pending further order, these parties are not to be questioned about the motivations or financing of the suits reviewed above by the court.

3. The subpoena duces tecum and any other discovery shall be responded to by May 4, 2000.

June 6, 2000

This case came before the Court on May 25, 2000, on various motions. Thomas M. Lawson, Robert A. Ziogas, and Deborah M. Chandler, Esquires, appeared for Carolinas Cement Company; Warren E. Zirkle, Sean F. Murphy, and Jeffrey L. Novak, Esquires, appeared for Riverton Investment Corporation; Clifford A. Athey, Jr., Esquire, appeared for the Weddles.

Thereupon, extensive argument was heard on the Defendants' assertion of the *Noerr-Pennington* doctrine as a privilege to the use of strawpersons to file legal proceedings, and the Plaintiff's motion that the Court reconsider its April 14, 2000, rulings. The Court has considered the parties' argument and memoranda of authorities.

### I. *Conclusions of Law*

The *Noerr-Pennington* doctrine arose in the context of an antitrust case, and "an argument that *Noerr-Pennington* is no more than a method of construing the Sherman Act has some support in the cases." *Whelen v. Tyler Abell*, 48 F.3d 1247, 1254 (D.C. 1995). Recognizing the potential tension between the right of Congress to regulate commerce under the Commerce Clause and to enact antitrust statutes and the right to petition the government under the First Amendment, the United States Supreme Court has refused to apply the Sherman Act in a manner "that would disqualify people from taking a public position on matters in which they were financially interested" because it would "deprive the people of their right to petition in the very instances in which the right may be the most important to them." *Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961). *Noerr* arose in a political context in which a group of railroads and a trade association hired front organizations to appear to support proposed legislation which would have harmed the trucking industry and benefited the railroads.

After *Noerr*, the Supreme Court expressly held that the right to petition the government to influence state action also applied to legal actions. "[T]he right of access to the courts is an aspect of the First Amendment right to petition . . . ." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 76 L. Ed. 2d 277 (1983) (*Noerr-Pennington* extended to bar NLRB's attempt to enjoin prosecution of suit as an unfair labor practice).

There are two judicially recognized exceptions to *Noerr-Pennington* immunity as it applies to the legal process: the sham exception for baseless litigation and the fraud exception. While there has been considerable postulation in appellate decisions about the origin and limits of these

exceptions in the *Noerr-Pennington* context, it is difficult to imagine that any court in any context would ever recognize a defense which would protect an individual from liability who intentionally filed groundless or fraudulent litigation.

The Supreme Court has created a two prong test to assess a sham litigation exception to *Noerr-Pennington* immunity. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993). First, it must be determined whether the challenged litigation was "objectively baseless," and this is an objective inquiry into the facts of the earlier litigation and the applicable law. On April 14, 2000, this Court found that there was probable cause to file the three lawsuits in question; therefore, in this case, there is no need to address the second prong of the test, which is the subjective inquiry into whether an anti-competitive purpose was behind the litigation. *See Baltimore Scrap Corp. v. David Joseph Co.*, 81 F. Supp. 2d 602 (D. Md. 2000).

As applied to the judicial process, the *Noerr-Pennington* doctrine is not as permissive as its application in the political process from whence the right originally derived, so there is also a fraud exception to *Noerr-Pennington* immunity. "Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 30 L. Ed. 2d 277, 103 S. Ct. 2161 (1983). Therefore, intentional misrepresentations to either this Court or to the Board of Zoning Appeals (BZA) would not be protected by the *Noerr-Pennington* doctrine. *See Baltimore Scrap Corp. v. David Joseph Co.*, 81 F. Supp. 2d 602 (D. Md. 2000). The fraud allegations in the amended motion for judgment about false statements made by the Defendants appear to be inextricably intertwined with the allegations upon which the defamation action is premised, but the viability of the fraud action is not yet before the court.

There is a divergence among the federal circuits as to whether use of a "straw person" to file a suit is such a misrepresentation in a judicial proceeding that results in a loss of any potential *Noerr-Pennington* protection. The plaintiffs contend that where the law does not give one standing to petition the government, one cannot interfere with a competitor's business by manufacturing standing through the orchestration, funding, and control of litigation intended to destroy a competitor's ability to pursue its business. The plaintiffs rely primarily upon *In re Burlington Northern, Inc.*, 822 F.2d 518 (5th Cir. 1987), *rehearing denied*, 827 F.2d 768 (5th Cir. 1987), *cert. denied* by *Union Pacific RR. v. Energy Transportation Systems, Inc.*, 484 U.S. 1007, 108 S. Ct. 701 (1988), in which the Fifth Circuit ruled that "it would be an

unwarranted extension of *Noerr-Pennington*'s protection to hold that a party without an interest in a case sufficient to allow it to directly petition the courts may nonetheless indirectly seek its anti-competitive goals through encouraging and assisting the lawsuits of others." *In re Burlington Northern, Inc., supra,* 822 F.2d at 531.

Other courts around the country have held that, "[u]nder the *Noerr-Pennington* doctrine, a company may, even secretly and for anti-competitive purposes, sponsor a lawsuit against a competitor, so long as the lawsuit is neither a sham, meaning that it is not objectively baseless, nor fraudulent." *Baltimore Scrap Co. v. David J. Joseph Co.,* 81 F. Supp. 2d 602, 603 (D. Md. 2000). *See, e.g., Liberty Lake Investments, Inc. v. Magnuson,* 12 F.3d 155, 159 (9th Cir. 1993), *cert. denied,* 513 U.S. 818 (1994); *Opdyke Investment Co. v. City of Detroit,* 883 F.2d 1265, 1273 (6th Cir. 1989); *City of Cleveland v. Cleveland Electric Illuminating Co.,* 734 F.2d 1157, 1162 (6th Cir.), *cert. denied,* 469 U.S. 884 (1984); *Ludwig v. Superior Ct.,* 43 Cal. Rptr. 2d 350 (Cal. Ct. App. 1995), *petition for review denied,* 1995 Cal. LEXIS 7128 (Cal. Nov. 22, 1995). This court finds most persuasive the holding of *Baltimore Scrap, supra.* The Defendant Riverton has admitted that it funded the landowners' suits in question, but that is of no moment unless fraudulent statements were made to either the BZA or to this Court by persons at the instigation of Riverton. The fraud contemplated by the exception is fraud upon the tribunal. *See Liberty Lake Investments, Inc. v. Magnuson,* 12 F.3d 155, 158-59 (9th Cir. 1993), *cert. denied* 513 U.S. 818. Failure to disclose the real party in interest is not a fraud upon a tribunal except in states unlike Virginia which have passed legislation requiring that the real party in interest be disclosed in litigation.

## II. *Decision*

Upon consideration whereof, it is adjudged and ordered that Plaintiff's Motion to Reconsider is denied.

### July 13, 2000

This case came before the Court on July 12, 2000, on Defendants' Demurrers to the Amended Motion for Judgment. Thomas M. Lawson, Deborah Chandler, and Robert Ziogas, Esquires, appeared for Carolinas Cement; and Warren E. Zirkle and Sean F. Murphy, Esquires, appeared for Riverton Investment Corporation.

Upon consideration whereof, it is adjudged and ordered that:

1. As to Counts One and Two of the Amended Motion for Judgment (Tortious Interference):

a. The Demurrer is sustained as to any Claim for Tortious Interference with the River Site Lease Agreement between Roanoke Cement and the Allegheny Power Company, because the lease was not terminated.

b. The Demurrer is sustained as to any Claim for Tortious Interference with "existing valid contracts for the sale of dry cement," because none have been alleged.

c. The Demurrer is overruled as to any Claim for Tortious Interference with potential economic relationships with Crider & Shockey, Ennstone, Valley Ready Mix, and Tarmac America to the extent that the tortious interference is based on the alleged defamation of the Plaintiff.

d. The Demurrer to the claim of punitive damages is overruled.

e. The Demurrer is overruled to the extent that the tortious interference claim is based on the alleged defamation of the Plaintiff, except to the extent that the action is based on the statement allegedly made by Ken Alger.

f. The Demurrer is sustained to the claims of tortious interference based on the prior litigation between the parties. The substantive and procedural issues presented in the earlier litigation in Warren County upon which most of this present case is premised presented many subtle substantive and procedural issues for the Court as evidenced by the Court's many written opinions.

Roanoke Cement is understandably vexed by the legal imbroglio in which it became ensnarled in Warren County resulting from the proliferation of cases orchestrated by Riverton. As the Court observed, it has never before encountered such a reiteration of issues as these concatenation of cases produced, and it has had to struggle against its visceral impression, perhaps begot of the court's parochial experience in the Shenandoah Valley, that the cases filed by Riverton and its allies went "one case too far." With that in mind, the Court has reexamined *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972), and *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993). The latter case offered the court the greatest instruction:

> The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute

an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a "reasonable belief that there is a chance that [a] claim may be held valid upon adjudication. . . . When a court has found that an antitrust defendant claiming *Noerr* immunity had probable cause to sue, that finding compels the conclusion that a reasonable litigant in the defendant's position could realistically expect success on the merits of the challenged lawsuit. . . . Where . . . there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law.

*Id.* at 62-63 (citations omitted).

The Court has examined the file in Warren County Chancery No. 99-220, which is the only case in which the Court had a question about Riverton's probable cause to file, and it has read the transcript of the November 15, 1999, hearing on Riverton's motion for a temporary injunction. From a technical standpoint, while there was no statute which gave Riverton a right of appeal or a right of action to challenge the Economic Development Authority's decision called in question, by the same token there was no statute or appellate decision directly addressing the points raised by Riverton. While this Court was not persuaded by Riverton's arguments nor sanguine about its ultimate prospects of prevailing on the merits, it would appear that there was some law from which Riverton could "reasonably believe" that there was a "chance that a claim could be held valid upon adjudication." While Riverton may have gotten perilously close to the line, it did not cross it. Therefore, there was no "pattern of baseless, repetitive claims" in the Warren County cases, many though they be, to bring this case within the rule of *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972). In the underlying litigation in Warren County, Riverton and its allies substantially prevailed in preventing Roanoke Cement's proposed use of the river site, whose use as contemplated by Roanoke Cement was unlawful because of the limits on the use of the access road. Although Riverton won a few procedural battles on the EDA Lot approval, it lost the war, and Roanoke Cement's project was permitted to go forward. Although procedural points sometimes appear trifling to the person against whom they are asserted, "It is procedure that spells the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under the law." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 179 (1951) (concurring).

2. As to Count Three of the Amended Motion for Judgment (Statutory Conspiracy), the Demurrer is overruled to the extent that the conspiracy is based on the defamation of the plaintiff by Ken Alger and on the alleged false statements made to Allegheny Power about the lease between Allegheny and Riverton and to the extent that conspiracy otherwise in violation of the statute is alleged and proved.

3. As to Count Four of the Amended Motion for Judgment (Defamation), the Demurrer is overruled in part and sustained in part:

a. Riverton's allegations in Riverton's Mandamus Petition in Warren Law No. 99-177 were privileged, and the republication of those privileged statements in the *Northern Virginia Daily* were also privileged, so the Demurrer is sustained as to those statements.

b. The statements that the proposed facility would be "economically harmful" and an "environmental threat" are expressions of opinions which cannot be objectively tested, so the Demurrer is sustained as to those statements.

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). "[W]hether a statement is characterized as a fact or opinion is no longer a relevant inquiry in determining whether it is constitutionally privileged." 50 Am. Jur. 2d, *Libel and Slander*, § 105, citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695. "[T]he threshold question in defamation suits is whether a reasonable factfinder could conclude that the published statements imply a provably false factual assertion . . . ." 50 Am. Jur. 2d, *Libel and Slander*, § 106. "[S]tatments of opinion can be actionable if they imply a provably false fact or rely upon stated facts that are provably false." *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. 1994).

"To determine if a publication is defamatory, the Court must look at the entire communication and not examine separate sentences or portions or with an eye constrained to the objectional feature alone. Construction will be derived from the expressions used in the whole scope and apparent object of the writer." 50 Am. Jur. 2d, *Libel and Slander*, § 124. The terms "economically harmful" and "environmental threat" are too subjective to be objectively tested, so they cannot be a premise for defamation.

c. The Demurrer is overruled as to the statements allegedly made by Ken Alger.

4. As to Count Five (Civil Conspiracy), the Demurrer is sustained, except to the extent that the alleged conspiracy is based upon the remaining defamation claims (Ken Alger statements), and to those conspiracies involving some person other than the defendant Roanoke Cement and its subsidiary or parent companies, which latter ruling also applies to the statutory conspiracy count.

5. As to Count Six (Abuse of Process), the Demurrer is sustained.

6. As to Count Seven (Fraud), the Demurrer is sustained.

7. The stay on discovery is lifted, and discovery may proceed on the remaining counts.

8. If not previously filed, the Defendants shall answer the amended motion for judgment within fourteen days.

## August 23, 2000

This matter came to be heard on July 12, 2000, and on August 23, 2000, on Defendants' Demurrers to the Amended Motion for Judgment and on the parties' subsequent objections to the Order ruling on Defendants' Demurrers dated July 13, 2000, and the parties' joint motion to correct said Order, and it appearing that the Order of July 13, 2000, ruling on Defendants' Demurrers should be corrected and revised accordingly and this Court having previously considered arguments both written and oral on Defendants' Motion for Partial Summary Judgment and Demurrers, it is adjudged and ordered as follows:

1. As to Counts One and Two of the Amended Motion for Judgment (Tortious Interference), the Demurrer is sustained in part and overruled in part:

a. The Demurrer is sustained as to Plaintiffs' claim for Tortious Interference with the River Site lease agreement between Roanoke Cement and Allegheny Power Company as the lease was not terminated.

b. The Demurrer is sustained as to Plaintiffs' claim for Tortious Interference with "existing valid contracts for the sale of dry cement" because none have been alleged.

c. The Demurrer is overruled as to Plaintiffs' claim for Tortious Interference with potential economic relationships with Crider & Shockey, Ennstone, Valley Ready Mix, and Tarmac America to the extent that the tortious interference is based on the alleged defamation of Plaintiffs.

d. The Demurrer to the claim of punitive damages is overruled.

e. The Demurrer is overruled to the extent that the Tortious Interference claim is based on the alleged defamation of Plaintiffs based on the statements allegedly made by Ken Alger.

f. The Demurrer is sustained to the claims of Tortious Interference based on the prior litigation between the parties. The substantive and procedural issues presented in the earlier litigation in Warren County upon which most of this present case is premised presented many subtle substantive and procedural issues for the Court as evidenced by the Court's many written opinions.

Roanoke Cement is understandably vexed by the legal imbroglio in which it became ensnarled in Warren County resulting from the proliferation of cases orchestrated by Riverton. As the Court observed, it has never before encountered such a reiteration of issues as this concatenation of cases produced, and it has had to struggle against its visceral impression, perhaps begot of the Court's parochial experience in the Shenandoah Valley, that the cases filed by Riverton and its allies went "one case too far." With that in mind, the Court has re-examined *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972), and *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993). The latter case offered the Court the greatest instruction.

> The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a "reasonable belief that there is a chance that [a] claim may be held valid upon adjudication. . . . When a court has found that an antitrust defendant claiming *Noerr* immunity had probable cause to sue, that finding compels the conclusion that a reasonable litigant in the defendant's position could realistically expect success on the merits of the challenged lawsuit. . . . Where . . . there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law.

*Id*. at 62-63 (cites omitted).

The Court has examined the file in Warren County Chancery No. 99-220, which is the only case in which the Court had a question about Riverton's probable cause to file, and it has read the transcript of the November 15, 1999, hearing on Riverton's motion for a temporary injunction. From a technical

standpoint, while there was no statute which gave Riverton a right of appeal or a right of action to challenge the Economic Development Authority's decision called in question, by the same token, there was no statute or appellate decision directly addressing the points raised by Riverton. While this Court was not persuaded by Riverton's arguments nor sanguine about its ultimate prospects of prevailing on the merits, it would appear that there was some law from which Riverton could "reasonably believe" that there was a "chance that a claim could be held valid upon adjudication." While Riverton may have gotten perilously close to the line, it did not cross it. Therefore, there was no "pattern of baseless, repetitive claims" in the Warren County cases, many though they be, to bring this case within the rule of *California Motor Transport*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972). In the underlying litigation in Warren County, Riverton and its allies substantially prevailed in preventing Roanoke Cement's proposed use of the River Site, whose use as contemplated by Roanoke Cement was unlawful because of the limits on the use of the access road. Although Riverton won a few procedural battles on the EDA lot approval, it lost the war, and Roanoke Cement's project was permitted to go forward. Although procedural points sometimes appear trifling to the person against whom they are asserted, "it is procedure that spells the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under the law." *Joint Anti-Facist Refugee Committee v. McGrath*, 341 U.S. 123, 179 (1951) (concurring).

2. As to Count Three of the Amended Motion for Judgment (Statutory Conspiracy), the Demurrer is sustained in part and overruled in part. The Demurrer is overruled to the extent that the conspiracy claim is based on the alleged defamation of Plaintiffs by Ken Alger and on the alleged false statements made to Allegheny Power about the lease agreement between Allegheny Power and Roanoke Cement, and to the extent that conspiracy otherwise in violation of the statute is alleged and proved except for the conspiracy claims based on underlying litigation filed in Warren County which this Court has determined is protected under the *Noerr-Pennington* doctrine.

3. As to Count Four of the Amended Motion for Judgment (Defamation), the Demurrer is overruled in part and sustained in part:

a. Riverton's allegations in Riverton's mandamus petition in Warren County Law No. 99-177 were privileged, and the republication of those privileged statements in the *Northern Virginia Daily* were also privileged, so the Demurrer is sustained as to those statements.

b. The statements that the proposed facility would be "economically harmful" and an "environmental threat" are expressions of opinion which cannot be objectively tested, so the Demurrer is sustained as to those statements.

"Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges, but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 94 S.Ct. 2997 (1994). "[W]hether a statement is characterized as a fact or opinion is no longer a relevant inquiry in determining whether it is constitutionally privileged." 50 Am. Jur. 2d, *Libel and Slander*, § 105 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695). "[T]he threshold question in defamation suits is whether a reasonable factfinder could conclude that the published statements imply a provably false factual assertion . . . ." 50 Am. Jur. 2d, *Libel and Slander*, § 106. "[S]tatements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false." *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. 1994).

"To determine if a publication is defamatory, the Court must look at the entire communication and not examine separate sentences or portions or with an eye constrained to the objectional feature alone. Construction will be derived from the expressions used in the whole scope and apparent object of the writer." 50 Am. Jur. 2d, *Libel and Slander*, § 124. The terms "economically harmful" and "environmental threat" are too subjective to be objectively tested, so they cannot be a premise for defamation.

c. The Demurrer is overruled as to the false statements allegedly made by Ken Alger about Plaintiffs.

4. As to Count Five of the Amended Motion for Judgment (Civil Conspiracy), the Demurrer is sustained in part and overruled in part. The Demurrer is overruled to the extent that the alleged conspiracy is based upon the remaining defamation claims (Ken Alger statements) and to those conspiracies involving some person other than the Defendant Riverton and its subsidiary or parent companies except for the conspiracy claims based on the underlying litigation filed in Warren County which this Court has determined is protected under the *Noerr-Pennington* doctrine. The latter ruling also applies to Count Three (Statutory Conspiracy).

5. As to Count Six of the Amended Motion for Judgment (Abuse of Process), the Demurrer is sustained.

6. As to Count Seven of the amended Motion for Judgment (Fraud), the Demurrer is sustained.

82

7. The stay on discovery is lifted, and discovery may proceed on the remaining counts.

Leave is granted to the Plaintiffs to file a Second Amended Motion for Judgment, and nothing herein shall be construed as a dismissal of any of Plaintiffs' claims or a final order, and this matter is continued on the Court's docket for further proceeding.

September 29, 2000

This case came before the Court on September 26, 2000, on Defendants' Demurrers to the Second Amended Motion for Judgment. Thomas M. Lawson, Deborah Chandler, and Robert Ziogas, Esquires, appeared for Carolinas Cement; and Sean F. Murphy and J. L. Novak, Esquires, appeared for Riverton Investment Corporation.

Once again, these parties come before the Court girded with an armory of authorities, and, once again, this Court has considered the amorphous dimensions of the *Noerr-Pennington* doctrine as it applies to litigation between competitors. After much dialytic discussion and consideration, it is adjudged and ordered that:

1. As to Counts One and Two of the Second Amended Motion for Judgment (Tortious Interference), the Demurrer is sustained in part and overruled in part:

a. The Demurrer is sustained as to any Claim for Tortious Interference with the River Site Lease Agreement between Roanoke Cement and the Allegheny Power Company, because the lease was not terminated.

b. The Demurrer is overruled as to any Claim for Tortious Interference with "existing valid contracts for the sale of dry cement" because that defect in the earlier pleadings has now been cured.

c. The Demurrer is overruled as to any Claim for Tortious Interference with potential economic relationships with Crider & Shockey, Ennstone, Valley Ready Mix, and Tarmac America to the extent that the tortious interference is based on the alleged defamation of the Plaintiff.

d. The Demurrer to the claim of punitive damages is overruled.

e. The Demurrer is overruled to the extent that the tortious interference claim is based on the alleged defamation of the Plaintiff based on the statements allegedly made by Ken Alger.

f. The Demurrer is sustained to the claims of tortious interference based on the prior litigation between the parties. For the reasons stated in the Court's August 23, 2000, Order, and for the following additional reasons.

*California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972), is the seminal case on the application of the *Noerr-Pennington* doctrine in the context of court proceedings. In that case, the plaintiffs alleged "a concerted action by petitioners (the defendants) to institute state and federal proceedings to resist and defeat applications by the respondents (plaintiffs) to acquire operating rights or transfer those rights." *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 509, 30 L. Ed. 2d 642 (1972). Implicit in the majority opinion and expressly stated in the concurring opinion in *California Motor Transport* was the concept that "an agreement to finance and to carry out . . . a consistent, systematic, and uninterrupted program of opposing 'with or without probable cause and regardless of the merits' every application, with insignificant exceptions, additional operating rights or for the registration or transfer of operating rights . . ." which was carried out by the defendants was actionable. Twenty years later in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993) (a single copyright action), the Supreme Court again considered the question of what type litigation was protected by the *Noerr-Pennington* doctrine and stated:

> The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a "reasonable belief that there is a chance that [a] claim may be held valid upon adjudication" . . . . When a court has found that an antitrust defendant claiming *Noerr* immunity had probable cause to sue, that finding compels the conclusion that a reasonable litigant in the defendant's position could realistically expect success on the merits of the challenged lawsuit. . . . Where . . . there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law.

*Id.* at 62-63 (cites omitted).

Since *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993), the Ninth and Second Federal Courts of Appeal have construed *Professional Real Estate Investors*

as the analysis to be applied when considering a single case, but where there are multiple filings, a different rule applies. Most recently in *PrimeTime 24 Joint Venture v. N.B.C.*, 219 F.3d 92 (2d Cir. 2000), the Second Circuit Court of Appeals stated:

> To establish "sham" administrative or judicial proceedings, a plaintiff must show that the litigation in question is: (i) "objectively baseless," and (ii) "an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process — as an anticompetitive weapon." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993) (citations, internal quotation marks, and alternatives omitted).
>
> This two-step inquiry, however, applies to determining "whether a single action constitutes sham petitioning." *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (interpreting *Professional Real Estate*). In cases in which "the defendant is accused of bringing a whole series of legal proceedings," the test is not "retrospective" but "prospective": "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *Id.* As the Ninth Circuit has noted, it is immaterial that some of the claims might, "as a matter of chance," have merit. The relevant issue is whether the legal challenges *are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.*

*Id.* (emphasis added). This is the analysis which Roanoke Cement has consistently argued that this Court should apply.

Other courts considering the question have reached a different conclusion. For example, in *Levine v. McLeskey*, 881 F. Supp. 1030 (E.D. Va. 1995), the United States District Court for the Eastern District of Virginia applied the "PRE" test, as this court did on an earlier occasion, and decided that "Only if the challenged litigation is objectively baseless may a court examine the litigant's subjective motivation." As this court noted in the oral argument, to reach the conclusion of the Eastern District, *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993), must be read to pronounce a new rule for scrutinizing

litigation, whether one case or a series of cases, which is claimed to be protected by the *Noerr-Pennington* doctrine.

The best resolution of the intellectual tension between the "objectively baseless test" of *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993), and the prospective inquiry into the subjective motivation of the litigant discussed in *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 30 L. Ed. 2d 642 (1972), is Judge Jones' decision in *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996). This decision is logical and lucid, and it rationally harmonizes these two ostensibly disparate cases. This Court wholly adopts Judge Jones' decision on the basis and scope of the *Noerr* immunity and its application to knowingly false statements and sham litigation. As Judge Jones states, the first test to apply is whether the lawsuit or lawsuits were objectively baseless, which is the test which this Court earlier applied, "Because the objective prong of the test must be satisfied before the Court can consider evidence of the subjective prong, a finding that the lawsuit is not objectively baseless precludes liability regardless of improper motive." *Gen-Probe* at 957.

Having considered the Weddle-Bowden Brief in Opposition to Roanoke's Motion to Dismiss Appeal filed in the Supreme Court, this Court finds that Weddle-Bowden's efforts to persuade the Supreme Court that the case was not moot were not objectively baseless. There were decisions in other states whose principles, if accepted by the Supreme Court, would have led them to dismiss Roanoke Cement's Motion to Dismiss based on mootness.

2. As to Count Three of the Second Amended Motion for Judgment (Statutory Conspiracy), the Demurrer is sustained in part and overruled in part. The Demurrer is overruled to the extent that the conspiracy claim is based on the alleged defamation of the plaintiffs by Ken Alger and on the alleged false statements made to Allegheny Power about the lease between Allegheny and Riverton and to the extent that conspiracy otherwise in violation of the statute is alleged and proved except for the conspiracy claims based on the underlying litigation filed in Warren County and based on the opposition to the motion to dismiss in the Supreme Court, which this Court has determined is protected under the *Noerr-Pennington* doctrine.

3. As to Count Four of the Second Amended Motion for Judgment (Defamation), the Demurrer is overruled in part and sustained in part:

a. Riverton's allegations in Riverton's Mandamus Petition in Warren Law No. 99-177 were privileged, and the republication of those privileged statements in the *Northern Virginia Daily* were also privileged, so the demurrer is sustained as to those statements.

b. The statements that the proposed facility would be "economically harmful" and an "environmental threat" are expressions of opinions which cannot be objectively tested, so the Demurrer is sustained as to those statements.

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). "[W]hether a statement is characterized as a fact or opinion is no longer a relevant inquiry in determining whether it is constitutionally privileged." 50 Am. Jur. 2d, *Libel and Slander*, § 105, citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695. "[T]he threshold question in defamation suits is whether a reasonable factfinder could conclude that the published statements imply a provably false factual assertion . . . ." 50 Am. Jur. 2d, *Libel and Slander*, § 106. "[S]tatments of opinion can be actionable if they imply a provably false fact or rely upon stated facts that are provably false." *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. 1994).

"To determine if a publication is defamatory, the Court must look at the entire communication and not examine separate sentences or portions or with an eye constrained to the objectional feature alone. Construction will be derived from the expressions used in the whole scope and apparent object of the writer." 50 Am. Jur. 2d, *Libel and Slander*, § 124. The terms "economically harmful" and "environmental threat" are too subjective to be objectively tested, so they cannot be a premise for defamation.

c. The Demurrer is overruled as to the statements allegedly made by Ken Alger about the Plaintiffs.

4. As to Count Five (Civil Conspiracy) of the Second Amended Motion for Judgment, the Demurrer is sustained in part and overruled in part. The Demurrer is overruled to the extent that the alleged conspiracy is based upon the remaining defamation claims (Ken Alger statements) and to those conspiracies involving some person other than the defendant Roanoke Cement and its subsidiary or parent companies, except for the conspiracy claims based on the underlying litigation filed in Warren County and in opposition to the motion to dismiss in the Supreme Court, which this Court has determined are protected under the *Noerr-Pennington* doctrine. This latter ruling also applies to the statutory conspiracy count (Count Three).

5. The Demurrer is sustained as to Count Six (Abuse of Process) of the Second Amended Motion for Judgment.

6. The Demurrer is sustained as to Count Seven (Fraud) of the Second Amended Motion for Judgment.

7. If not previously answered, the Defendants shall file a grounds of defense to the Second Amended Motion for Judgment on or before October 13, 2000.